**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  9:23-cv-81285**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| WILSON J. RONDINI, III, FALCON CAPITAL LLP, and FALCON CAPITAL PARTNERS LIMITED, | ) ) ) ) |
| Defendants. | ) ) ) ) |

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Securities and Exchange Commission ("the Commission") alleges the

following against defendants Wilson J. Rondini, III ("Rondini"), Falcon Capital LLP ("Falcon

LLP"), and Falcon Capital Partners Limited ("Falcon Limited"):

**INTRODUCTION**

1.      From at least 2018 through the end of 2022, Defendants Rondini, Falcon LLP,

and Falcon Limited acted as brokers and dealers, engaged in the business of both effecting

transactions in securities for the accounts of others and buying and selling securities for their

own accounts.  During that time, Defendants raised tens of millions of dollars on behalf of over

a dozen companies that issued stock (commonly referred to as "issuers") and bought and sold

millions of dollars' worth of securities for their own accounts.  Yet, at no time during the

relevant period did Rondini, Falcon LLP, or Falcon Limited register as a broker-dealer with the

Commission or associate with a broker-dealer registered with the Commission.

2.      Rondini, Falcon LLP, and Falcon Limited all engaged in the business of effecting transactions in securities for the accounts of others, thereby acting as brokers. Falcon LLP and Falcon Limited entered into agreements with over a dozen issuers or their underwriters, agreeing to solicit investors to purchase the issuers' securities. In exchange for their efforts, Defendants received commission-based compensation in the form of cash and stock warrants (a financial instrument that gives the holder the right to buy or sell a specific number of shares of a company's stock). After executing an agreement with a given issuer, Rondini sent mass emails to a roster of prospective investors, touting the issuer's stock and encouraging recipients to buy the stock. Rondini also engaged in one-on-one communications with prospective investors via email or WhatsApp, soliciting the investor and providing advice on the merits of buying a particular company's stock. In addition, both Falcon LLP and Falcon Limited retained a network of approximately 60 subcontracted salespeople that solicited investors to buy stock in certain companies in exchange for commissions based on the amount of money the salesperson was able to raise. From 2018 through 2022, Defendants' broker activity included sales to U.S. investors and, during parts of this time period, Rondini physically operated his business from the United States, engaging in sales to both U.S. and foreign investors. By engaging in this brokerage activity without being registered with the Commission as a broker-dealer or associating with a registered broker-dealer, Defendants broke the law.

3.      In addition to acting as brokers, Rondini, Falcon LLP, and Falcon Limited also acted as dealers, engaging in the business of buying and selling securities for their own accounts. Rondini routinely engaged in what he called "private transactions," dealing in the securities of some of the issuers before they had conducted an Initial Public Offering ("IPO") of their stock to the investing public, and with whom the Falcon entities had executed agreements. Signing on behalf of different Falcon entities, Rondini executed stock purchase agreements with

pre-IPO shareholders who wanted to sell their stock, buying those shareholders' stock at one price and then selling those shares to interested investors at a mark-up. Rondini's emails effecting these "private transactions" include correspondence sent in his capacity as managing partner of Falcon LLP, and, in dealings with his escrow agent, Rondini assigned proceeds from these "private transactions" to both Falcon LLP and Falcon Limited. Defendants engaged in private transactions occurring during the time period Rondini was physically operating his business from the United States. By engaging in this dealer activity without being registered with the Commission as a broker-dealer or associating with a registered broker-dealer, Defendants broke the law.

4.      Rondini, Falcon LLP, and Falcon Limited violated Section 15(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78o(a)(1)]. Rondini is also liable under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] as a control person with respect to the violation of Section 15(a)(1) by Falcon LLP and Falcon Limited. The Commission seeks injunctive relief against Defendants, disgorgement of ill-gotten gains, prejudgment interest on disgorgement, civil penalties, and an order preventing Defendants from engaging in transactions in penny stocks.

## DEFENDANTS

5.      Wilson J. Rondini, III, age 60, is a resident of Palm Beach, Florida. Rondini is the managing partner of Falcon LLP and indirectly owns the entirety of Falcon Limited. In the 1980s and 1990s, Rondini was previously associated with registered broker-dealers, but he has not been associated with a registered broker-dealer since founding Falcon Capital in the late 1990s.

6.      Falcon Capital LLP was a limited liability partnership organized under the laws of the United Kingdom. It was previously registered with the United Kingdom's Financial

Conduct Authority, but it canceled its registration as of January 4, 2023.  Falcon LLP has never

been registered as a broker-dealer with the Commission.  Rondini holds a 59% membership

share of Falcon LLP.  As of July 11, 2023, Falcon LLP has been dissolved.

7. Falcon Limited is a corporation organized under the laws of Hong Kong, Special

Administrative Region (S.A.R.), China.  Upon information and belief, Falcon Limited is not

licensed with the Hong Kong Securities and Futures Commission.  Falcon Limited has never

been registered as a broker-dealer with the Commission.  Falcon Limited is owned 100% by

Falcon Capital Partners Private Foundation, a private foundation registered in Curaçao, which,

in turn, is 100% owned by Rondini.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to Sections

21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa].

9. This Court has general personal jurisdiction over Rondini because he resides in

the United States.  In addition, this Court has specific personal jurisdiction over Rondini, Falcon

LLP, and Falcon Limited because each defendant had sufficient minimum contacts with the

United States in pursuing their conduct as unregistered broker-dealers.  Rondini began

operating Falcon LLP and Falcon Limited from the United States beginning in late 2020.  In

addition, both prior to and during the period Rondini was operating Falcon LLP and Falcon

Limited from the United States, Falcon LLP and Falcon Limited contracted with issuers based

in the United States, often with Rondini signing the agreement on behalf of the Falcon entity.

Payments Falcon LLP and Falcon Limited handled in connection with their unregistered

broker-dealer activity—including but not limited to compensation received from issuers,

commissions paid to subcontracted salespeople, and payments related to the purchase and sale

of securities in the "private transactions" involving pre-IPO shares—were processed through an

4

escrow account Rondini maintained at First Horizon Bank in Tennessee.  Acting pursuant to

agreements Falcon LLP and Falcon Limited executed with issuers, Rondini solicited U.S.

investors.  In addition, even before he began operating Falcon LLP and Falcon Limited from the

United States in the fall of 2020, Rondini conducted a substantial amount of business on behalf

of Falcon LLP and Falcon Limited from the United States, hosting a Falcon Capital conference

in Las Vegas in June 2019 and frequently conducting his broker and dealer activities while

traveling in the United States.

10.     Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C.

§ 78aa] because Rondini resides in this District and has transacted business here.

11.     In connection with the conduct alleged in this Complaint, Rondini, Falcon LLP,

and Falcon Limited, directly and indirectly, singly or in concert with others, made use of the

means or instruments of transportation or communication in interstate commerce and of the

mails.  As detailed below, the conduct alleged in this Complaint involved deliberate or reckless

disregard of regulatory requirements.

## FACTUAL ALLEGATIONS

### I.     Falcon LLP and Falcon Limited Agreed to Solicit Investors

12.     Falcon LLP and Falcon Limited entered into contracts with over a dozen issuers

or their underwriters (an underwriter is a person who acts as a link in a chain of transactions

through which stock moves from an issuer to the public), agreeing to solicit investors to

purchase securities in exchange for commission-based compensation.  In nearly all cases,

Rondini was the signatory for the Falcon Capital entity that was party to these agreements.  The

agreements concerned both issuers raising financing prior to an IPO, as well as issuers pursuing

an IPO.

13.     With respect to pre-IPO financing, one of the Falcon entities would agree to identify investors willing to purchase stock in a private placement of the issuer's shares.  In exchange, the issuer agreed to pay the Falcon entity a cash fee equal to a percentage of the total amount the Falcon entity raised from investors, *i.e.* 10% of the gross proceeds the issuer received from investors who purchased through Falcon entity solicitations ("Falcon investors").  In addition, several agreements provided that the issuer would provide additional compensation in the form of warrants to purchase a percentage of the total shares sold to Falcon investors.

14.     For issuers preparing for an IPO, one of the Falcon entities would enter into agreements with the issuer's underwriter, agreeing to sell an allocation of shares to investors in exchange for commissions.  For example, in one agreement, Falcon LLP agreed to accept compensation of 71.43% of the total cash commission and warrants received by the underwriter for shares the underwriter sold to investors Falcon LLP had referred.  In another agreement, Falcon LLP agreed to a cash fee of 4.5% of the gross sales price of securities Falcon LLP investors purchased.

15.     The issuers with whom Falcon LLP or Falcon Limited contracted included, among others, the following companies: BeatClub, Boxlight Corporation, CNS Pharmaceuticals, Inc., Esports Technologies, Inc., Impossible Kicks, Moleculin Biotech, Inc., My Job Matcher, Inc. (a/k/a Job.com), Quantum Computing Inc., Soliton, Inc., Sondors, Inc., StereoVision Imaging, TuneGO, Inc., Volcon, Inc., Weyland Tech (n/k/a Logiq, Inc.), and World View Enterprises.  Each of these companies is based in the United States.

16.     Fees paid pursuant to the agreements Falcon LLP and Falcon Limited executed with issuers were frequently wired through an escrow account managed by Falcon Capital LLC, a limited liability company based in Tennessee that Rondini used as his escrow agent.  The escrow account Falcon Capital LLC maintained was at First Horizon Bank in Tennessee.

## II.    Rondini, Falcon LLP, and Falcon Limited Solicited Investors

17.    After executing an agreement with either an issuer or its underwriter, Falcon LLP or Falcon Limited solicited investors to purchase shares.  To attract investors, Rondini sent out frequent mass emails with a signature block that identified him as the "Managing Partner" of "Falcon Capital," drawing no distinction between Falcon LLP or Falcon Limited.  In these mass emails, which Rondini called "missives," Rondini touted the merits of a single issuer or highlighted multiple issuers with whom the Falcon entities had agreements.  By way of example, in an October 10, 2019 email, Rondini touted the stock of CNS Pharmaceuticals, Inc., noting "[a]ll looking very very good on CNS," and offered recipients a chance to obtain an allocation of shares in the IPO the following month.  In a May 3, 2020 mass email, Rondini promoted Moleculin Biotech, Inc.: "The situation at Moleculin is becoming extremely compelling . . . so much so . . . that we have been sharing the story with our entire Universe recently versus a more targeted audience."  In a January 22, 2021 mass email, Rondini touted TuneGO, Inc., stating "[w]e are of the opinion that we could see an exit in the range of 7x to 10x current levels on a transaction with Big Tech before the bell tolls on 2021."  Rondini's mass emails frequently concluded with a message encouraging a recipient to message Rondini via WhatsApp or to reach out via email to obtain shares.

18.    In addition to sending mass emails, Rondini solicited investors one-on-one via email and WhatsApp to obtain expressions of interest in purchasing stock and arrange for the investor to wire funds directly to the issuer or to Rondini's escrow agent, Falcon Capital LLC. Rondini also sent out emails to individual investors with electronic links to the documents investors needed to participate in a stock transaction (commonly referred to as "subscription documents").  His emails to individual investors frequently included messages touting the companies he was promoting or encouraging investors to pay attention to upcoming news the

companies would be releasing.  Rondini also provided investors with advice on what to purchase.  For example, in a May 30, 2018 email, Rondini told an investor: "The strategy that we use with these pre-IPO's with the A1/S1's filed is to buy an equal amount on the IPO . . . sell the spike and then hold the pre-IPO for the bigger moves . . . leaking it out at 90 day intervals."  In another instance, on March 15, 2021, Rondini told a U.S.-based investor: "Sell some SOLY . . . not all."  Rondini's emails were always from the domain name "@falcon-capital.com" and often included the Falcon Capital signature block.

19.     Rondini, operating through Falcon LLP and Falcon Limited, also employed a network of at least 60 subcontracted salespeople to solicit investors to purchase stock in issuers. These subcontracted salespeople entered into "Consultancy Services Agreements" with Falcon Limited and Falcon LLP in which the salesperson agreed to contact investors and attempt to raise funds by selling them stock in certain issuers in exchange for a fee.  These subcontracted salespeople were paid on commission, often receiving 5% of the amount the salesperson was able to raise from investors.  Rondini frequently paid these commissions to his salespeople through the Falcon Capital LLC escrow account in Tennessee, ordering his escrow agent to wire the payment.  Depending on which issuer's securities were being sold, Rondini ordered his escrow agent to attribute the commission payment to Falcon LLP or Falcon Limited.  After paying commissions to the salespeople, Rondini would frequently instruct the escrow agent to transfer remaining funds to Rondini's personal bank accounts.  Rondini also sent emails to issuers requesting that stock warrants due under consultancy agreements be allocated to the salespeople and Rondini himself.

III.    **Defendants Solicited U.S. Investors and Conducted Business in the United States**

20.     In connection with agreements Falcon LLP and Falcon Limited executed with issuers, Falcon LLP and Falcon Limited solicited investors domiciled in the United States to

purchase stock in various issuers.  Rondini communicated directly with multiple U.S. investors to tout different issuers, give advice on the merits of a transaction, and facilitate U.S. investors' purchase of securities.  On at least one occasion, Rondini assisted a U.S. investor in making an investment with an issuer notwithstanding the issuer's agreement with Falcon Limited prohibiting Falcon Limited from soliciting investors in the United States.  Rondini counseled the investor, who maintained residences in North Carolina and Malaysia, to use his Malaysia address, telling the investor that the issuer "may not accept US investors" and that use of the Malaysia addressed was "just for pre ipo.  You can still deposit in your normal brokerage acct."

21.     Beginning in late 2020, Rondini began physically operating his business from the United States.

22.     Even prior to the time when Rondini began operating his business from the United States, Rondini conducted extensive business in the United States on behalf of Falcon LLP and Falcon Limited.  By way of example, in a February 19, 2019 email to Falcon investors in Soliton, Inc., Rondini stated "we have been fielding queries on delivery starting at 7 am. Monday (Far East time) through a few minutes ago . . . we have been explaining the mechanics from hotel lobby's today to row six on an American Airlines flight from Charlotte to Palm Beach to the car from the airport upon arrival . . . we are always accessible."  In June 2019, Rondini held an event for Falcon investors in Las Vegas, Nevada.  Falcon investors gathered and heard presentations, including one from the CEO of CNS Pharmaceuticals, Inc. and one from the CEO of StereoVision Imaging.

## IV.     Defendants' Unregistered Dealer Activity

23.     In addition to acting as unregistered brokers, Defendants also acted as unregistered dealers.  Defendants engaged in what Rondini described as "private transactions." In these transactions, Rondini, signing agreements on behalf of different Falcon entities

including "Falcon Capital" and "Falcon Equity Partners," purchased pre-IPO shares from shareholders who wanted to sell their stock. After taking these securities on the books of the Falcon entity signing the agreement, Rondini then contracted with interested buyers to sell them the shares, charging them a higher price than the price at which the Falcon entity had acquired the shares. The period of time during which the shares were held in a Falcon entity's inventory varied from a time as short as one day to a time as long as several months.

24.     Defendants used these "private transactions" as an additional means to generate revenue. Rondini described a "private transaction" in June 2019 involving pre-IPO shares of CNS Pharmaceuticals, Inc. in an email to his partner in Falcon LLP, noting that the entity had acquired a total of 79,167 shares of CNS from two stockholders and would be selling them to five other investors: "We bought the shares at $1.60 . . . We put them out at $2.00 . . . . We are taking the spread as a fee . . . $31,667."

25.     Several of these "private transactions" involved U.S. investors. By way of example, on October 1, 2021, a Texas resident purchased 20,000 pre-IPO shares of TuneGO, Inc. at $1.10 per share from Falcon Equity Partners a now-defunct UK-based entity Rondini controlled. Falcon Equity Partners had acquired the shares from another investor the previous day, September 30, 2021, at $0.90 per share. On October 19, 2021, a Florida resident purchased 18,519 pre-IPO shares of TuneGO, Inc. at $1.35 per share from Falcon Equity Partners. Similarly, on October 19, 2021, a North Carolina resident purchased 18,519 pre-IPO shares of TuneGo, Inc. at $1.35 per share from Falcon Equity Partners. Falcon Equity Partners had acquired the shares sold to these last two purchasers from a prior investor at a price of either $0.88 per share or $0.90 per share.

26.     Rondini sent email correspondence concerning these private transactions in his capacity as managing partner of Falcon UK. In addition, in dealings with his escrow agent,

Rondini assigned proceeds from these "private transactions" to both Falcon LLP and Falcon Limited.

## CLAIM FOR RELIEF

### COUNT ONE

### Violation of Section 15(a)(1) of the Exchange Act – Broker Registration

27.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-26, above.

28.     From at least 2018 through the end of 2022, Rondini, Falcon LLP, and Falcon Limited engaged in the business of effecting transactions in securities for the accounts of others and, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, effected transactions in, or induced or attempted to induce the purchase or sale of, securities, while they were not registered with the Commission as a broker and not associated with an entity registered with the Commission as a broker.

29.     The broker transactions at issue included sales to U.S. investors within the last five years.  In addition, the broker transactions at issue involved sales of securities to both U.S. and non-U.S. investors completed after Rondini began to physically operate his business, including the business of Falcon LLP and Falcon Limited, from the United States.

30.     By reason of the foregoing, Rondini, Falcon LLP, and Falcon Limited violated, and unless enjoined are reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

### COUNT TWO

### Violation of Section 15(a)(1) of the Exchange Act – Dealer Registration

31.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-30, above.

32.     From at least 2018 through the end of 2022, Rondini, Falcon LLP, and Falcon Limited engaged in the business of buying and selling securities for their own accounts and, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, effected transactions in, or induced or attempted to induce the purchase or sale of, securities, while they were not registered with the Commission as a dealer and not associated with an entity registered with the Commission as a dealer.

33.     The dealer transactions at issue involved sales of securities to both U.S. and non-U.S. investors completed after Rondini began to physically operate his business, including the business of Falcon LLP and Falcon Limited, from the United States.

34.     By reason of the foregoing, Rondini, Falcon LLP, and Falcon Limited violated, and unless enjoined are reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

**COUNT THREE**

**Control Person Liability Under Section 20(a) of the Exchange Act**

35.     The Commission repeats and incorporates by reference the allegations in paragraphs 1-34, above.

36.     From at least 2018 through the end of 2022, Rondini had the power to control the general affairs of both Falcon LLP and Falcon Limited.  He also had the power to control their corporate policies and activities in effecting transactions in securities for the accounts of others and engaging in the business of buying and selling securities for their own accounts.  As such, Rondini was a controlling person of both Falcon LLP and Falcon Limited for the purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

37.     As alleged above, Falcon LLP and Falcon Limited engaged in the business of effecting transactions in securities for the accounts of others, and engaged in the business of buying and selling securities for their own accounts.

38.     As alleged above, while engaged in these businesses, Falcon LLP and Falcon Limited directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of, securities, while they were not registered with the Commission as a broker or dealer and not associated with an entity registered with the Commission as a broker or dealer.  Thus, Falcon LLP and Falcon Limited violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

39.     Accordingly, Rondini is liable as a controlling person pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for the violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] committed by Falcon LLP and Falcon Limited.

## RELIEF REQUESTED

WHEREFORE, the Commission requests that this Court find Rondini, Falcon LLP, and Falcon Limited committed the violations alleged, and:

A.     Issue a permanent injunction, in a form consistent with Eleventh Circuit precedent, prohibiting Rondini, Falcon LLP, and Falcon Limited from violating Section 15(a) of the Exchange Act.

B.     Issue a permanent injunction enjoining Rondini, Falcon LLP, and Falcon Limited from directly or indirectly, including but not limited to, through any entity they own or control, engaging in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security, causing any person or entity to engage in any activity for the purpose of inducing or attempting to induce the purchase or sale of any security, or deriving compensation

13

from any activity engaged in for the purpose of inducing or attempting to induce the purchase or sale of any security, provided, however, that such injunction shall not prevent Rondini from purchasing or selling securities listed on a national securities exchange for his own personal account.

C.      Issue an Order directing Rondini, Falcon LLP, and Falcon Limited to disgorge, on a joint and several basis, all ill-gotten gains or proceeds received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

D.      Issue an Order directing Rondini, Falcon LLP, and Falcon Limited to pay, on a joint and several basis, a civil money penalty pursuant to Section 21(d) of the Exchange Act.

E.      Issue an Order prohibiting Rondini, Falcon LLP, and Falcon Limited from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

F.      Grant such other and further relief as may be necessary and appropriate.

G.      Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## **JURY DEMAND**

The Commission demands a jury in this matter for all claims so triable.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,


/s/Richard M. Harper II_____
Richard M. Harper II (Special Bar ID # A5503112)
Jonathan T. Menitove (Special Bar ID # A5503111)
Jeffrey T. Cook (FL-Bar# 647578)
Alexandra B. Lavin (Special Bar ID # A5503099)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8979 (Harper)
HarperR@sec.gov

Dated: September 18, 2023